IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PROPHET PAULCIN,
      Plaintiff,

vs.                    3:09cv493/LAC/MD

WALTER MCNEIL, et al.
        Defendants.

---

# O R D E R

Plaintiff has submitted his partial initial filing fee, and this cause is before the court upon plaintiff's civil rights complaint filed pursuant to Title 42 U.S.C. §1983. Plaintiff's original complaint is a poor quality photocopy that is difficult to read. However, from a review of this complaint, it is evident that plaintiff is not entitled to the relief sought with respect to at least some of his claims. The court will therefore allow the plaintiff an opportunity to submit an amended complaint.

Plaintiff was incarcerated at Santa Rosa Correctional Institution at the time the events giving rise to this complaint took place. Named as defendants in this action are Secretary Walter A. McNeil, Warden Ellis, Major J.R. Johnson, Captain F.A. Rhodes, Lt. M.C. Marinin, and Sgt. K.P. Grant. Plaintiff alleges that on April 22, 2009, he was disciplined for allegedly defeating or tampering with a locking device, a charge that was later dismissed due to insufficient evidence (doc. 1 at ¶ 2, 17). On April 23, 2009, plaintiff was roused by defendants Marinin and Grant and told to pack his property because he was going to be placed on property restriction as a result of the incident. (Doc. 1 at ¶ 1). Johnson also allegedly directed defendants Marinin, Grant and Rhodes to spray the plaintiff with chemical agents nine times although at no time proper to or during the application of the chemical agents was plaintiff an immediate threat to himself or others,

he was not creating a security problem and he did not pose a genuine or realistic threat. (Doc. 1 at ¶ 5). Plaintiff asserts that defendant Grant sprayed plaintiff with chemical agents, defendant Marinin "assisted" him and defendant Rhodes was present but failed to intervene to protect the plaintiff. (Doc. 1 at ¶¶ 7 & 8). Plaintiff claims that as a result of the unwarranted application of chemical agents he suffered burning skin and lungs, congested breathing and tearing eyes, nasal discharge and sneezing, sensation of respiratory distress and further exacerbation of existing medical and mental conditions including intense helplessness, fear of dying and suicidal ideation, during which plaintiff overdosed on medication and had to receive medical treatment to prevent imminent death.[1] (Doc. 1 at ¶ 10). The pain caused by the application of the chemical agents lingered for approximately 7 days. (Doc. 1 at ¶ 11). In addition, plaintiff was placed on property restriction for four days in a cold cell with no mattress, linen, clothing, toilet paper, toothpaste or toothbrush. (Doc. 1 at ¶¶12 & 13). He asserts that he suffered sleep deprivation, aches and pains in his body from having to sleep on steel and diminishment of his psychological and physical capacity. (Doc. 1 at ¶ 14). Plaintiff claims that the defendants admitted in their grievance response that they retaliated against the plaintiff for his alleged tampering with the security device. (Doc. 1 at ¶ 18).

Plaintiff claims that defendants McNeil and Ellis have a "systematic policy and practice of placing inmates at Santa Rosa on property restriction and improperly utilizing chemical agents against prisoners in retaliation for past acts of defeating or tampering with a security device when there is no evidence to support said accusation." (Doc. 1 at ¶ 19). **The fact that this happened one time is not evidence of a policy.** Plaintiff then asserts that he had been placed on property restriction and wrongfully sprayed with chemical agents on two prior occasions and that he had placed the defendants on notice of this through the filing of grievances. (Doc. 1 at ¶¶ 20-22).

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

---

[1]As plaintiff was incarcerated at the time, it is not clear how he would have gained access to medication sufficient to cause an "overdose."

1. whether the conduct complained of was committed by a person acting under color of state law; and

2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988) (citations omitted); *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (citing *West*).

To the extent plaintiff sues defendants in their official capacities, the defendants are entitled to Eleventh Amendment immunity. A plaintiff may not bring a § 1983 action for monetary damages against the state or state officials in their official capacities. *Miller v. King*, 384 F.3d 1248 (11th Cir. 2004).[2] A suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45, 58 (1989). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit brought by a private individual against a state in federal court. *See Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 122 S.Ct. 1864, 1877-78, 152 L.Ed.2d 962 (2002); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Gamble v. Florida Department of Heath and Rehabilitative Services*, 779 F.2d 1509, 1511 (11th Cir. 1986). Thus plaintiff cannot state a claim against the defendants in their official capacities.

Plaintiff claims the existence of a policy of using chemical agents and property restriction on inmates in retaliation for alleged acts of defeating or tampering with a security device (doc. 1 at ¶ 19). However, a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy that resulted in a constitutional violation

---

[2]State officials in their official capacities are not immune from claims for prospective declaratory or injunctive relief. *Powell v. Barrett*, 496 F.3d 1288, 1308 & n. 27 (11th Cir. 2007); *Miller v. King*, 384 F.3d 1248 (11th Cir. 2004) (citing *Will*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10 105 L.Ed.2d 45 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)); *Ex parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908); see *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir.1995); *Stevens v. Gay*, 864 F.2d 113, 114-15 (11th Cir.1989)).

and will not state a claim. *See Dwares v. City of New York,* 985 F.2d 94, 100 (2nd Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823- 24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)); *Dyno v. Village of Johnson City*, 240 Fed.Appx. 432 (2nd Cir. 2007) (citing *Dwares*); *Rivers v. Escambia County Jail*, 2005 WL 2176863 (N.D. Fla. 2005).

Furthermore, to the extent plaintiff claims that the punishment inflicted upon his was "retaliatory," his choice of terminology is inapposite. Retaliation claims in the context of § 1983 typically arise when an inmate is subjected to adverse consequences for the exercise of a constitutional right. *See, e.g., Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997); *Wright v. Newsome*, 795 F.2d 964 968 (11th Cir. 1986); *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986). Although prisoners have a right to be free from retaliatory punishment for the exercise of a constitutional right, *Adams v. James*, 784 F.2d 1077, 1079-80 (11th Cir. 1986); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985), broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005); *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987); *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987). In order to state a claim, the retaliation complaint must identify both the retaliatory conduct and the underlying act that prompted the retaliation. See *Harbin-Bey*, 420 F.3d at 579; *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). A prisoner-plaintiff in a retaliation case must first prove that the conduct which led to the alleged retaliation was constitutionally protected. *Douglas v. Yates*, 535 F.3d at 1321; *Harbin-Bey*, 420 F.3d at 579; *Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001). He must then show that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Douglas v. Yates*, 535 F.3d at 1321 (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); see also *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (plaintiff must then "sufficiently allege facts" establishing that the actions taken against him were in retaliation for, for instance, filing

lawsuits and accessing the courts, and would not have happened but for the retaliatory motive); *Harbin-Bey*, 420 F.3d at 579 (also requiring that the retaliatory act "would deter a person of ordinary firmness); *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). Adverse actions taken against an inmate in retaliation for filing grievances violate the inmate's constitutional rights. *Douglas v. Yates*, 535 F.3d at 1321; *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). However, if the alleged retaliatory actor had no knowledge of the protected activity, a cause of action for retaliation will not lie. Finally, an inmate may not state a claim of retaliation where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998) (quoting *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir.1990) (per curiam)); *see also, Romansky v. Stickman,* 147 Fed.Appx. 310, 2005 WL 2271154 (3rd Cir. 2005) (where a prisoner is found guilty of a disciplinary infraction, he does not state a claim for retaliation in its writing); *Earnest v. Courtney*, 64 F.3d 365, 366-67 (8th Cir. 1995) (per curiam) (assignment to utility squad for gambling not retaliatory); *Henderson v. Baird*, 29 F.3d 464, 465, 469 (8th Cir.1994) (assault charge and conviction found not to be retaliatory; a finding that a prisoner violated the rules checkmates his retaliation claim); *Hartsfield v. Nichols,* 511 F.3d 826 (8th Cir. 2008) (citing *Henderson*); *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir.1993) (alleged retaliatory transfer); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996); *Wilson v. Phipps*, 149 F.3d 1185 (6th Cir. 1998) (Table, text in WESTLAW). Clearly, the facts of this case do not give rise to a claim of "retaliation."

With respect to plaintiff's claim against defendant Rhodes, the Eleventh Circuit has stated that in the event of alleged excessive force by a law enforcement or corrections officer, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance. *Crenshaw v. Lister*, 556 F.3d 1283, 1293, 1294 (11th Cir. 2009) (but in this case no excessive force found, so no duty to intervene*); Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007); *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (quoting *Fundiller v. Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985));

*Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000). Therefore, an officer who is present at such a beating and fails to intervene may be held liable though he administered no blow. *Velazquez*, 484 F.3d 1340 (citing *Skirtch*, 280 F.3d at 1301). While an officer has an affirmative duty to prevent another from violating an individual's constitutional rights, the officer must have a realistic opportunity to prevent the illegal conduct, ie. the non-intervening officer must have been in a position to intervene yet failed to do so. *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (citing *Priester v. City of Rivera Beach, FL,* 208 F.3d 919, 924 (11th Cir. 2000)); *see also Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994). A merely negligent failure to protect an inmate does not state a claim under § 1983. *Galloway*, 352 F.3d at 1350; *Brown*, 894 F.2d at 1537; *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Plaintiff should provide more detail with respect to defendant Rhodes' alleged failure to protect him. In addition, although he contends that defendant Marinin "assisted" Grant in applying the chemical agents, it is not clear exactly what Marinin did, or whether his passive role might be more appropriately described as a failure to protect the plaintiff.

As to defendants McNeil and Ellis, should also be aware that *respondeat superior*, without more, does not provide a basis for recovery under section 1983. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Goebert v. Lee County,* 510 F.3d 1312, 1331 (11th Cir. 2007); *Cottone v. Jenne, 326* F.3d 1352 (11th Cir. 2003); *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995). "Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003); see also *Marsh v. Butler County,* 268 F.3d 1014, 1035 (11th Cir. 2001)*; Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). Thus, one cannot be held liable for the actions or omissions of others, but can only be held responsible if he participated in the deprivation of plaintiff's constitutional rights. *Marsh, supra; Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995).

The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez v. Reno*, 325 F.3d at 1228, 1234 (11th Cir. 2003) (quoting *Braddy v. Fla. Dept. of Labor & and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998))); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985). A supervisor ordinarily cannot be held liable under a *respondeat superior* theory for the acts and omissions of individuals acting in contravention to policy. *Tittle v. Jefferson County Commission,* 10 F.3d 1535, 1540 (11th Cir. 1994). However, the causal connection may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights" or when facts support an inference that the supervisor "directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Goebert v. Lee County,* 510 F.3d 1312, 1331 (11th Cir. 2007) (citation omitted); *Cottone*, 326 F.3d at 1360. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone, supra,* (quoting *Gonzalez*, 325 F.3d at 1234).

In amending, plaintiff should carefully review the foregoing to determine whether he can present allegations sufficient to state a cause of action under the relevant law. If plaintiff chooses to file an amended complaint, he must completely fill out a new civil rights complaint form, that has been marked "Amended Complaint." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. Plaintiff must truthfully and completely fill out the section of the form asking for information about his prior litigation history, as failure to do so could result in dismissal of his case. Next, in the statement of facts, plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of

the alleged unconstitutional acts.    It is essential that the facts relating to each defendant be set out clearly and in detail because in civil rights cases, more than conclusory and vague allegations are required to state a cause of action.  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11ᵗʰ Cir. 2001)*; GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1366 (11ᵗʰ Cir. 1998);  *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11ᵗʰ  Cir. 1984).  If plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a defendant from his complaint.   In the section entitled "Statement of Claim," plaintiff must state what rights he contends have been violated, and he must provide support in the statement of facts for the claimed violations.  Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida.

Plaintiff should file the amended complaint with an original signature with the Court and keep an identical copy for himself.  Plaintiff should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint.  The court will notify plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment.  Furthermore, plaintiff should not submit service copies of his complaint unless and until the court directs him to do so.  Finally, plaintiff is advised that discovery is premature at this stage of the case and plaintiff should not do any discovery without leave of court.

Accordingly, it is ORDERED:

1.  The clerk of court is directed to forward to the plaintiff a civil rights complaint form for use in actions under 42 U.S.C.  §1983.  This case number and the words "Amended Complaint" should be written on the form.

2.  The plaintiff shall have **twenty-eight (28) days** in which to file an original amended civil rights complaint, which shall be typed or clearly (legibly) written and submitted on court forms.

3.    Failure to submit an amended complaint as instructed will result in a recommendation of dismissal of this action.

DONE AND ORDERED this 20th day of May, 2010.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**